UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
RAYMOND VANACORE and DEANNA
VANACORE,

                                  Plaintiffs,                No. 16-CV-1969 (CS)

     – against –                                **OPINION & ORDER**

VANCO SALES LLC and MICHAEL
VANACORE,

                                  Defendants.

-------------------------------------------------------------------------x

Appearances:

Robert E. DiNardo
Newburgh, New York
*Counsel for Plaintiffs*

Gardiner S. Barone
Goshen, New York
*Counsel for Defendants*

Seibel, J.

       Plaintiffs Raymond and Deanna Vanacore assert claims arising out of an oral agreement with Defendants Michael Vanacore and Vanco Sales LLC. Before the Court are Defendants' Motion to Dismiss, (Doc. 21), and Motion for Sanctions, (Doc. 25). For the reasons stated below, Defendants' Motion to Dismiss is GRANTED and their Motion for Sanctions is DENIED.

1

## I. BACKGROUND

### A. Facts

I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Amended Complaint ("AC"). (Doc. 13.)

At some unspecified time in 2003, nonparty Anthony Cannella presented Plaintiff Raymond Vanacore ("Raymond") with a business opportunity to deliver pharmaceutical drugs on an emergency basis. (*Id.* ¶ 2.) Because the opportunity required a significant capital investment, Raymond approached his cousin, Defendant Michael Vanacore ("Michael"), and offered to include Michael in the opportunity in exchange for Michael providing the capital investment. (*Id.*) Michael agreed with Raymond and Cannella to use an existing entity, Defendant Vanco Sales LLC ("Vanco"),[1] to deliver the pharmaceuticals. (*Id.* ¶ 3.) Michael was Vanco's managing member and was solely responsible for its administration, including collecting its revenues, distributing any payments, and filing any required tax forms. (*Id.* ¶¶ 11, 17.)

Raymond, Cannella, and Michael agreed that they would share revenue from the operation as follows: 15% to Raymond, "for organizing the business and finding the capital investment;" 30% to Cannella, "for assisting in the delivery and providing the business opportunity to the others;" and 55% to Michael, "for providing the capital, using . . . Van[]co . . . , and administering the business." (*Id.* ¶ 4.) That agreement was oral. (*See id.* ¶¶ 20, 26 (describing agreement as "verbal").)

Vanco entered into a contract with Fresenius Medical Care ("Fresenius") to deliver pharmaceutical drugs on an emergency basis, which contract was for an indefinite duration and

---

[1] The AC names "Vanco Sales LLC" as a defendant, but refers to both "Vanco" and "Vanaco." I assume that both refer to the same entity, and therefore will refer only to "Vanco."

was terminable at will. (*Id.* ¶¶ 5-7.) Pursuant to this contract, Vanco performed and was compensated for services it provided Fresenius from 2003 through June 2016. (*Id.* ¶ 8.) The amount of services Vanco provided, and thus the amount of compensation paid to Vanco, varied over time. (*Id.* ¶¶ 9-10.) Vanco's sole source of revenue during this time was compensation under the Fresenius contract. (*Id.* ¶ 13.) Plaintiffs allege that as Vanco's managing member, Michael was solely responsible for administering services under the Fresenius contract, (*id.* ¶ 12), but elsewhere they allege that Cannella participated in the delivery of the pharmaceutical drugs, (*id.* ¶ 4). Michael was solely responsible for distributing payments to Raymond under the oral agreement. (*Id.* ¶ 16.)

From 2003 to April 2015, Michael paid Cannella and Raymond[2] commissions under the oral agreement, (*see id.* ¶ 14), which for Raymond amounted to approximately $300,000, (*id.* ¶ 33). From 2003 through June 2016, Vanco distributed approximately $1 million to Michael or his designees. (*Id.* ¶ 34.) In April 2015, Plaintiffs stopped receiving payments from Michael or Vanco. (*See id.* ¶¶ 14, 38.) Plaintiffs have unsuccessfully demanded payment. (*Id.* ¶ 38.)

**B. Procedural History**

Plaintiffs filed the instant suit on March 17, 2016. (Doc. 1.) Following pre-motion correspondence and a pre-motion conference regarding Defendants' proposed motion to dismiss the complaint, (Docs. 11, 12), on June 30, 2016 Plaintiffs filed the AC, (Doc. 13), in which they seek an accounting and assert claims for specific performance, breach of contract, and unjust enrichment. Defendants then filed the instant motion to dismiss. (Doc. 21.)

On August 1, 2016, Defendants served on Plaintiffs a proposed motion for sanctions under Federal Rule of Civil Procedure 11(c)(2). (Doc. 27 Ex. H.) Plaintiffs did not withdraw or

---

[2] From time to time Raymond assigned his share in the revenue to his wife, Plaintiff Deanna Vanacore. (*Id.* ¶ 15.)

3

attempt to further amend the AC, and Defendants filed the instant motion for sanctions on November 1, 2016. (Doc. 25.)

## II. **MOTION TO DISMISS**

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the oral agreement is unenforceable because it does not comply with the New York statute of frauds.

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## B. Statute of Frauds

The New York statute of frauds provides that certain agreements are "void, unless [they] or some note or memorandum thereof be in writing" and signed by the party to be charged. N.Y. Gen. Oblig. Law § 5-701(a). Included are "contract[s] to pay compensation for services rendered in negotiating . . . the purchase, sale, exchange, renting or leasing . . . of a business opportunity, business, its good will, inventory, fixtures, or an interest therein . . . . 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." *Id.* § 5-701(a)(10). Section 5-701(a)(10) "bar[s] the enforcement of unwritten agreements for services where the plaintiff has requested compensation in exchange for having identified a business opportunity, secured potential business partners, and contributed to the formation of a business team." *Prince v. Gov't of People's Republic of China, Inst. of Architecture Design & Research*, No. 13-CV-2106, 2014 WL 1303417, at *4 (S.D.N.Y. Mar. 31, 2014). Section 5-701(a)(10) applies whether "the transaction results in the acquisition of an existing enterprise or the formation of a new one." *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010) (internal quotation marks omitted). Defendants argue that the oral agreement falls squarely within § 5-701(a)(10), and is therefore void because there is no written "note or memorandum thereof." I agree.

Plaintiffs allege the existence of an oral agreement under which Raymond would be compensated "for organizing the business and finding the capital investment." (AC ¶ 4.) The conduct for which Plaintiffs seek compensation clearly falls within the statute's definition of negotiating – Raymond brought the Cannella opportunity to Michael, (*id.* ¶ 2), secured Michael's participation in terms of both capital and management, (*id.* ¶¶ 2-4), and thereby enabled the consummation of the Fresenius contract. *See* N.Y. Gen. Oblig. Law § 5-701(a)(10). And what Raymond created by putting Michael together with Cannella was clearly a "business opportunity." The statute is intended to cover agreements, like the oral agreement here, for "providing 'know-how' or 'know-who'[] in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in an enterprise." *Freedman v. Chem. Constr. Corp.*, 372 N.E.2d 12, 16 (N.Y. 1977). Because Plaintiffs do not allege that the agreement was memorialized in writing, and instead allege that it was "verbal," (AC ¶¶ 20, 26), the statute of frauds renders it unenforceable.

Plaintiffs argue that the oral agreement was not intended to compensate Raymond for his role in negotiating the business opportunity, but instead to pay him "a commission for procuring an agreement between the defendants and the third-party Fresenius." (Doc. 27 Ex. I ("P's Mem."), at 4.)[3] The main problem with this argument is that the AC says no such thing; it says that the 15% was for "organizing the business and finding the capital investment," (AC ¶ 4), not for finding a customer for the business.[4] Further, section 5-701(a)(10) would apply whether the agreement was characterized as compensating Raymond for his role in the negotiations leading to the formation of the enterprise or for enabling the enterprise to secure the Fresenius

---

[3] It appears that Plaintiffs never filed their opposition to Defendants' motion to dismiss on ECF. Defendants attached Plaintiffs' opposition brief as an exhibit to their motion for sanctions. (Doc. 27 Ex. I.)

[4] Indeed, the AC says the Vanco-Fresenius agreement postdated the alleged oral agreement among Raymond, Michael, and Cannella.

opportunity. *See Freedman*, 372 N.E.2d at 16 (using connections, ability, and knowledge to arrange meetings between "appropriate persons" and procure contract are "just th[e] kind of situation[s] to which the statute is addressed"); *see also Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV*, 754 F. Supp. 2d 610, 614-16 (S.D.N.Y. 2010) (section 5-701(a)(10) applied to agreement to compensate "sales agent" for transactions it brokered between defendant and customers); *I.M. Oberman Assocs., Inc. v. Republic Fin. Servs., Inc.*, No. 92-CV-1843, 1992 WL 370416, at *3 (S.D.N.Y. Dec. 7, 1992) ("[A]greements to compensate a party for procuring customers fall squarely within the broad language of Section 5-701(a)(10)."); *Goldmark Assocs., Inc. v. Tech. Erectors, Inc.*, No. 87-CV-5018, 1990 WL 89369, at *4-5 (S.D.N.Y. June 18, 1990) (oral agreement was unenforceable where plaintiff's "responsibilities were to bid projects, transmit documents and specifications, and negotiate purchase orders"); *Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.*, 628 F. Supp. 1237, 1240 (S.D.N.Y. 1986) (providing information regarding which customers would buy company's products was within 5-701(a)(10)).

Plaintiffs also argue that the oral agreement is outside section 5-701(a)(10) because it was "an agreement to provide delivery services to the pharmaceutical company and to divide the proceeds." (Doc. 20 at 2.) Although their argument is far from clear, Plaintiffs appear to argue that the agreement here is more akin to a joint venture, to which the statute of frauds may not apply. *See Caruso v. Grace*, No. 11-cv-2353, 2011 WL 4472479, at *7 (S.D.N.Y. Sept. 27, 2011) ("[W]here the relationship between the parties is more 'closely akin to that of [a] joint venture' no writing is required.") (quoting *Dura v. Walker, Hart & Co.*, 267 N.E.2d 83, 85 (N.Y. 1971)). But that characterization is directly contradicted by the AC, which alleges that Michael (and possibly Cannella) would provide services to Fresenius, (AC ¶¶ 4, 12), while Raymond was to be compensated "for organizing the business and finding the capital investment," (*id.* ¶ 4).

The agreement, as alleged, contemplates that Raymond be compensated for his role in procuring Michael as the investor and negotiating the deal among himself, Michael, and Cannella, not for providing services to Fresenius. Such an oral agreement is unenforceable under section 5-701(a)(10).

Finally, Plaintiffs try to save their claims by changing the subject and rebutting an argument Defendants do not make on this motion: Plaintiffs cite three cases which they argue hold "that the Statute of Frauds do[es] not apply [to] an agreement to compensate a commissioned salesperson for procuring an agreement which is capable of being performed within a year." (Doc. 20 at 2.) Even if this were a fair characterization of the alleged agreement, which it is not, none of the cases Plaintiffs cite discuss section 5-701(a)(10) – rather, they address section 5-701(a)(1), which bars enforcement of contracts that cannot be performed within one year – and they are thus inapplicable. *See Am. Credit Servs., Inc. v. Jay Robinson Chrysler/Plymouth*, 615 N.Y.S.2d 175, 176 (4th Dep't 1994) (section 5-701(a)(1) inapplicable to agreement because "although capable of an indefinite continuance, [it] could have been terminated by either party at any time"); *Gold v. Katz*, 598 N.Y.S.2d 205, 206 (1st Dep't 1993) (fee sharing agreement not barred by section 5-701(a)(1) because it "was capable of performance within a year"); *Prussiano v. Sunrise Plastering Corp.*, 141 N.Y.S.2d 277, 278 (2d Dep't 1955) (statute of frauds did not bar agreement because it was "at will and for no definite or specific time and thus by its terms did not necessarily extend beyond one year from the time of its making") (internal quotation marks omitted). Even if the agreements in these decisions were comparable to the revenue sharing agreement here – which is impossible to tell from the brief decisions – those courts did not address whether section 5-701(a)(10) applied where section 5-701(a)(1) did not.

Because the oral agreement is unenforceable,[5] Plaintiffs' claims for breach of contract and specific performance of that contract must fail. Further, where the statute of frauds renders an agreement unenforceable, a plaintiff may not recover under a theory of unjust enrichment or quasi-contract. *See Snyder v. Bronfman*, 921 N.E.2d 567, 569-70 (statute of frauds applies to unjust enrichment and *quantum meruit* claims where "plaintiff is . . . seeking compensation for services rendered in finding and negotiating a business opportunity"); *see also Intertex*, 754 F. Supp. 2d at 616 ("It is well settled in New York . . . that a plaintiff may not assert an unjust enrichment claim to circumvent the statute of frauds."); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 344-46 (S.D.N.Y. 2001) (dismissing "unjust enrichment and *quantum meruit* claims [that] depend upon proof of an unenforceable contract"). Thus Plaintiffs' claim for unjust enrichment must also fail. Likewise, Plaintiffs are not entitled to an "accounting of all transactions made by the Defendants with respect to the underlying agreement," (AC ¶ 24), because the underlying agreement is unenforceable under the statute of frauds. *See Himani v. Mojawalla*, 649 N.Y.S.2d 157, 158-59 (2d Dep't 1996) (affirming dismissal of claim for accounting where statute of frauds barred enforcement of underlying agreement); *Guterman v. RGA Accessories*, 602 N.Y.S.2d 116, 118 (1st Dep't 1993) (same).[6]

### III. LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to

---

[5] Plaintiffs have not argued that Defendants' alleged part performance of the oral agreement renders it enforceable, and it appears that no such doctrine exists for contracts rendered void under section 5-701. *See Messner Vetere Berger McNamee Schmetterer Euro RSCG v. Aegis Grp.*, 711 N.E.2d 953, 956 n.1 (N.Y. 1999) (declining to adopt "judicially-created part performance exception to . . . § 5-701"); *Valentino v. Davis*, 703 N.Y.S.2d 609, 611 (3d Dep't 2000) ("[T]he doctrine of part performance cannot save contracts governed by . . . § 5-701.").

[6] In light of this disposition, I need not address Defendants' argument that Plaintiffs have not pleaded their entitlement to an accounting even were the underlying agreement valid.

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended their complaint once after having the benefit of a pre-motion letter from Defendants outlining their proposed grounds for dismissal, (Doc. 11), and my observations during the May 19, 2016 conference. Plaintiffs' failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *Payne v. Malemathew,* 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiffs have not asked to amend again or otherwise suggested they are in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## IV. <u>RULE 11 SANCTIONS</u>

In a separate motion, Defendants seek sanctions based on their argument that Plaintiffs' causes of action are "entirely foreclosed by existing state law," and thus that the AC violates rule 11(b)(2). (Doc. 27 at 5.)

Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed."

11

*Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (internal quotation marks omitted). As such, "[s]anctions may be . . . imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). Further, if a pleading is "factually without foundation" it may violate Rule 11 "even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.*, 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). "[D]istrict courts generally have wide discretion in deciding when sanctions are appropriate." *Morely v. Ciba-Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (alteration in original) (internal quotation marks omitted).

Courts look to an objective standard of reasonableness rather than "the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (internal quotation marks omitted).

> Under the objective standard, district courts should impose sanctions whenever a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1468 (2d Cir. 1988) (emphasis in original) (internal quotation marks omitted), *rev'd in part on other grounds*, 493 U.S. 120 (1989). The following factors are among those considered in deciding whether to impose sanctions:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern o[f] activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 265 (S.D.N.Y. 2009); *see Simpson v. Putnam Cty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 291-92 (S.D.N.Y. 2000). Rule 11 sanctions "should be imposed with caution, resolving all doubts in favor of the party facing sanctions." *Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 263 (citation, alteration, and internal quotation marks omitted).

"The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable. The operative question is whether the argument is frivolous, i.e., the legal position has no chance of success, and there is no reasonable argument to extend modify or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (citation and internal quotation marks omitted).

Plaintiffs advanced four causes of action arising out of an oral agreement the enforcement of which, as discussed above, is foreclosed by the statute of frauds. I am hesitant to conclude, however, that Plaintiffs' AC had "no chance of success," *id.*, given the existence of decisions finding the statute of frauds inapplicable to situations arguably at least superficially similar to this one. In *Caruso*, the court found that an oral agreement to set up a television series was not barred by the statute of frauds because, although it contemplated the negotiating of a business opportunity, any compensation for the plaintiff was for her future role in the television series rather than for her role in setting up the series. *See* 2011 WL 4472479, at *8 ("[T]he Agreement is not barred because [plaintiff] did not enter into an agreement for compensation for her services."). And in *Gold*, 598 N.Y.S.2d at 206, and *Prussiano*, 141 N.Y.S.2d at 278, the courts upheld fee-sharing agreements under section 5-701(a)(1), and Plaintiffs could have inferred that those courts' failures to address the applicability of section 5-701(a)(10) meant that section 5-701(a)(10) would not apply to the agreement here.

13

These decisions are not on point and do not persuade me that the oral agreement here was outside the statute of frauds, and Plaintiffs' arguments therefrom are "undoubtedly weak," *Bilharz v. First Interstate Bank*, 98 F.3d 985, 989 (7th Cir. 1996), and certainly a "long-shot," *Fishoff*, 634 F.3d at 654. But "resolving all doubts in favor of the party facing sanctions," *Ho Myung Moolsan Co.*, 665 F. Supp. 2d at 263 (alteration omitted), I find that Plaintiffs were not objectively unreasonable in seeking to convince me that the AC pleaded an oral agreement outside of the statute of frauds. Sanctions are thus not warranted. *See Saeme v. Levine*, 502 F. App'x 849, 853-54 (11th Cir. 2012) (district court did not abuse discretion in denying motion for sanctions under Rule 11 where statute of frauds required dismissal of the case); *Bilharz*, 98 F.3d at 989 (reversing district court's imposition of Rule 11 sanctions where although plaintiff's "arguments were undoubtedly weak, we cannot say that her claims were so devoid of factual support that sanctions were appropriate"); *cf. Posner v. Minn. Mining & Mfg. Co.*, 713 F. Supp. 562, 564-65 (E.D.N.Y. 1989) (dismissing claims as barred under statute of frauds, but denying motion for sanctions because *pro se* plaintiffs' complaint "reflect[s] an attempt to investigate the claim to the best of their abilities"). Nevertheless, I hope Plaintiffs' counsel will do more research in the future in order to avoid situations like this.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED and their motion for sanctions is DENIED. The Clerk of Court is respectfully directed to terminate the pending Motions, (Docs. 21, 25), and close the case.

**SO ORDERED.**

Dated: June 27, 2017
       White Plains, New York

                                                              CATHY SEIBEL, U.S.D.J.